UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
JOHN GIUFFRE, LAUREN GIUFFRE,                   :
AND JOHN GIUFFRE ON BEHALF OF                   :
HIS TWO MINOR CHILDREN,                         :
                                                :       **MEMORANDUM AND ORDER**
                            Plaintiffs,         :       10-cv-1462 (DLI) (MDG)
                                                :
             -against-                          :
                                                :
DELTA AIR LINES, INC.,                          :
                                                :
                            Defendant.          :
                                                :
-------------------------------------------------------------- x
**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiffs John Giuffre, Lauren Giuffre and John Giuffre on behalf of his two minor children ("Plaintiffs") brought the instant action against defendant Delta Air Lines, Inc. ("Defendant"), seeking to recover damages pursuant to 14 C.F.R. Part 250, breach of contract and breach of the implied covenant of good faith and fair dealing, because they were not allowed to board a flight for which they had purchased tickets. Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is granted in its entirety.

**BACKGROUND**

On August 3, 2009, Plaintiffs were scheduled to take a flight from John F. Kennedy International Airport ("JFK") in Queens, New York to Orlando, Florida, departing at 8:15 a.m. (*See* Def.'s 56.1 Stmnt., Dkt. Entry 40, Ex. B. at 4.) Plaintiffs arrived at JFK at 7:00 a.m. and entered a curbside check-in line at approximately 7:06 a.m. (*Id.* ¶ 2; Pls.' R. 56.1 Stmnt. in Opp'n to Def.'s Mot. for Summ. J., Dkt. Entry 43 ("Pls.' 56.1 Stmnt."), ¶ 2.) When Plaintiffs entered the line, there were two or three people in front of them and Plaintiffs did not reach the

1

front of the line until 7:19 a.m. (Def.'s 56.1 Stmnt. ¶¶ 3-6; Pls.' 56.1 Stmnt. ¶¶ 3-6.) Upon reaching the counter, the curbside check-in agent informed Plaintiffs that they would not be able to check-in with baggage because it was less than one hour before their 8:15 a.m. flight. (Def.'s 56.1 Stmnt. ¶¶ 6-7; Pls.' 56.1 Stmnt. ¶¶ 6-7.)

Defendant offered to rebook Plaintiffs on a different flight, but Plaintiffs declined because the alternate flight would not arrive in Orlando until much later in the day and they would have two layovers en route. (Def.'s 56.1 Stmnt. ¶ 11; Pls.' 56.1 Stmnt. ¶ 11; *see also* Def.'s 56.1 Stmnt. Ex. C at 34.) Instead, Plaintiffs purchased substitute transportation to Orlando that arrived at approximately the same time as their originally scheduled flight. (Def.'s 56.1 Stmnt. ¶ 11; Pls.' 56.1 Stmnt. ¶ 11.)

Plaintiffs brought this action seeking damages allegedly sustained from not being allowed to board their original flight. Plaintiffs alleged that Defendant's failure to allow Plaintiffs to board their flight without providing compensation violated the "denied boarding compensation" rule, 14 C.F.R. Part 250, and was a breach of the terms of their contract of carriage with Defendant, as well as a breach of the implied covenant of good faith and fair dealing in that contract. (*See generally* Compl., Dkt. Entry 1.) Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that: i) the denied boarding compensation rule is inapplicable to Plaintiffs' claims because it only governs customers who are not allowed to board an overbooked aircraft; ii) as a matter of law, Plaintiffs cannot establish their breach of contract and breach of the implied covenant of good faith and fair dealing claims; and iii) Plaintiffs' implied covenant of good faith and fair dealing claim is preempted by the Airline Deregulation Act of 1978. (*See* Def.'s Mem. of Law in Supp. of its Mot. for Summ. J., Dkt. Entry 41 ("Def.'s Mem.").) Plaintiffs oppose Defendant's motion,

contending that: i) the denied boarding compensation rule applies to Plaintiffs; ii) Defendant is collaterally estopped from defending against this action because of a previous consent decree with the government; and iii) the state law claims are not preempted and are meritorious. (*See* Pls.' Mem. of P. & A. in Reply to Def.'s Mot. for Summ. J., Dkt. Entry 44 ("Pls.' Mem.").) For the reasons set forth below, Defendant's motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F. 3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

**DISCUSSION**

I.    **Denied Boarding Compensation**

Defendant asserts that Plaintiffs are not entitled to denied boarding compensation pursuant to 14 C.F.R. Part 250 because the regulation only provides a remedy to customers who are "bumped" from an overbooked flight. (Def.'s Mem. 3-5.) According to Defendant, the rule does not apply to Plaintiffs because it is undisputed that they were not allowed to board their flight because they were late, not because the flight was overbooked. (*Id*.) Plaintiffs respond that Defendant's interpretation of the regulation is too narrow and the United States Department of Transportation ("DOT") has consistently taken the position that 14 C.F.R. Part 250 applies to any passenger who arrives in a check-in line before an airlines' stated cutoff time and is not allowed to board the flight because they did not reach the counter before the cutoff. (*See* Pls.' Mem. 5-8.)

The plain language of the denied boarding compensation rule only covers customers who have reserved a seat on an airplane, but are denied boarding because the flight has been oversold. The section of the regulation that governs compensation provides that airlines "shall pay compensation in interstate air transportation to passengers who are denied boarding involuntarily *from an oversold flight*." 14 C.F.R. § 250.5(a) (emphasis added). Indeed, the entirety of 14 C.F.R. Part 250 outlines procedures airlines must follow when a flight is oversold. For example, it mandates, "in the event of an oversold flight," that "the smallest practicable number" of people with tickets shall be denied boarding, and the airline must ask for volunteers to take a different flight in return for compensation before it involuntarily denies boarding and pays the mandated compensation. 14 C.F.R. §§ 250.2a, 250.2b(a). Moreover, there is nothing in the regulation

remotely suggesting it requires airlines to provide compensation to passengers who are involuntarily denied boarding for any other reason besides an oversold flight.

Here, it is undisputed that Plaintiffs were not allowed to board the flight from JFK to Orlando because Defendant determined that Plaintiffs arrived at the check-in counter too late. (Def.'s 56.1 Stmnt. ¶¶ 6-7; Pls.' 56.1 Stmnt. ¶¶ 6-7.)  It is also uncontested that Plaintiffs' flight was not oversold. (*See* Aff. of Kimberly A. Neale, Dkt. Entry 42 ("Neale Aff."), ¶¶ 3-4.)  Thus, Plaintiffs are not entitled to receive compensation pursuant to 14 C.F.R. Part 250.[1]

In support of their broad reading of 14 C.F.R. Part 250, Plaintiffs rely on a consent order issued by the DOT, *Spirit Airlines, Inc., Violations of 14 C.F.R. Part 250 et al.*, Order 2009-9-8 (Dep't of Transp., Sept. 17, 2009) (attached as Ex. C to Pls.' 56.1 Stmnt.) ("Spirit Order") and an e-mail, dated July 28, 2010, to Plaintiffs' counsel purportedly from a deputy assistant general counsel with the DOT discussing the denied boarding compensation rule ("DOT E-mail"). (*See* Pls.' 56.1 Stmnt. Ex. E.)  The Spirit Order and the DOT E-mail fail to sway the court for several reasons.

The Spirit Order provides that the DOT "has long held that it is an unfair and deceptive practice under 49 U.S.C. § 41712 for a carrier to declare passengers to be late check-ins when they are prevented from formally presenting their tickets at the ticket counter . . . due to the length of the lines of people waiting to check-in." Sprit Order 2 n.1 (quotation marks omitted). Assuming, *arguendo*, the court should credit the DOT's consent decree as an agency opinion, the

---

[1] The court also notes that there is nothing in 14 C.F.R. Part 250 that expressly provides for a private right of action and at least one other court of concurrent jurisdiction in this Circuit has held that the regulation can only be enforced by the Executive branch. *See Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 371 (S.D.N.Y. 2006) ("[T]he sole enforcement mechanism intended for a violation of the regulations at issue (and the FAA in general) is a civil action commenced by the Secretary of Transportation or Attorney General."), *aff'd on other grounds* 309 F. App'x 483 (2d. Cir. 2009). However, because Defendant does not raise this argument and is entitled to summary judgment on other grounds, the court assumes, without deciding, that there is a private right of action pursuant to 14 C.F.R. Part 250.

5

quoted language only states the DOT's opinion that declaring a passenger late when they are in the check-in line on time but cannot reach the check-in counter because the line is too long violates 49 U.S.C. § 41712, not 14 C.F.R. Part 250. 49 U.S.C. § 41712 prohibits certain deceptive practices by airlines and grants the Secretary of Transportation power to investigate such practices and bring an action to stop them, but it does not provide for a private right of action. *See Casas v. Am. Airlines, Inc.*, 304 F. 3d 517, 522-23 (5th Cir. 2002) (49 U.S.C. § 41712 enforced by Secretary of Transportation only). Moreover, the Spirit Order reinforces the court's holding that 14 C.F.R. Part 250 applies only to passengers bumped from overbooked flights. In the order, the DOT labels the regulation as its "oversales rules" and describes its purpose as providing compensation to passengers who "have been bumped involuntarily from the flight because it was oversold." Spirit Order 1-2.

    The DOT E-mail asserts that "I think the [Defendant] is wrong in having asserted [Plaintiffs] did not comply with its check-in deadline because [they were] not actually checked in by 7:15." DOT E-mail at 1. However, at most, the e-mail appears to be a preliminary informal opinion letter by an agency staff member, which is not entitled to traditional deference under *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council*, 467 U.S. 837 (1984). *See De La Mota v. U.S. Dep't. of Educ.*, 412 F. 3d 71, 79 (2d Cir. 2005) (*Chevron* deference not warranted for "*ad hoc*, previously unwritten rules, supplied by a DOE staff employee."). The weight given to informal agency interpretations "depends on their 'thoroughness,' 'validity,' 'consistency,' and 'power to persuade.'" *Id.* at 80 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

    The DOT E-mail is not the product of a thorough investigation or analysis. It provides caveats such as "we cannot comments [sic] on the merits of a particular dispute . . . without having had a chance to investigate the matter ourselves." DOT E-mail at 1. It also does not

6

persuade the court that the regulation applies in this instance. Under any fair reading of the e-mail, it does not state that the regulation applies to Plaintiffs absent an oversold flight. In context, the e-mail more likely opines that Defendant must pay Plaintiffs compensation, if they were bumped from an oversold flight because they had not checked-in one hour before the flight, but were in line. *Cf.* 14 C.F.R. § 250.6 ("A passenger denied boarding involuntarily from an oversold flight shall not be eligible for denied boarding compensation if: (a) The passenger does not comply fully with the carrier's contract of carriage or tariff provisions regarding . . . check-in . . . .").

To the extent the DOT E-mail can be construed to imply that Plaintiffs are eligible for compensation under the 14 C.F.R. Part 250 in this instance, it is unpersuasive. The e-mail does not provide any analysis of how it could apply to Plaintiffs if they were not bumped because their flight was oversold or point to any provision of the regulation that would support such an interpretation. Therefore, the court finds that the DOT E-mail does not furnish any reason to depart from the plain language of the regulation.

Accordingly, summary judgment is granted in favor of Defendant on the 14 C.F.R. Part 250 claim.

**II.     Breach of Contract**

Defendant contends that Plaintiffs' breach of contract claim fails as a matter of law because its carriage contract explicitly provided that they had to check-in 60 minutes before departure. (Def.'s Mem. 5-6.) Plaintiffs do not dispute the import of the contract's terms, but instead raise policy concerns with Defendant's rule that customers have to be at the counter one hour before their flight rather than just in line. (Pls.' Mem. 6-7.)

Under New York law,[2] there are four elements of a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F. 3d 337, 348 (2d Cir. 1996). "In determining a party's obligations under a contract, 'the initial interpretation of a contract is a matter of law for the court to decide.'" *MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*, 2011 WL 1197634, at *6 (S.D.N.Y. Mar. 25, 2011) (quoting *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F. 3d 632, 637 (2d Cir. 1996)).

Tickets sold by Defendant incorporate terms from its Domestic General Rules Tariff ("Tariff") into its contract of carriage, as permitted by 49 U.S.C. § 41707, 14 C.F.R. § 253.5. (*See* Neale Aff. Ex. A; Def.'s 56.1 Stmnt. ¶ 8; Pls.' 56.1 Stmnt. ¶ 8.) The Tariff provides that:

> Reservations and seat assignments are subject to cancellation if the passenger is not at the airport and checked-in for his or her flight prior to the applicable check-in deadlines. . . .  It is the passenger's responsibility to arrive at the airport with sufficient time to complete all ticketing, baggage check, and security clearance procedures and to arrive at the gate ready to board by these deadlines.

(Neale Aff. Ex. A at 20.)

The Tariff defines "Check-in" as "the use of any automated process such as Virtual Check-in, Delta.com, Delta Direct, Kiosks or face-to-face contact with a Delta representative which changes the passengers [sic] reserved seat status from [reserved seat] to [checked-in]." (*Id.* at 21.)  The Tariff refers passengers to Defendant's website for check-in deadlines, which explains that the check-in deadline for customers with baggage at JFK is one hour before the flight. (*Id.* at Ex. B; Def.'s 56.1 Stmnt. ¶ 7; Pls.' 56.1 Stmnt. ¶ 7.)  Accordingly, under its unambiguous terms, Plaintiffs did not comply with the Tariff by being in line, but not actually checked-in, one hour before their flight and Defendant did not breach its contract of carriage by refusing to allow Plaintiffs to board.

---

[2] The parties do not contest that New York law governs the contract of carriage.

Plaintiffs' assertions that Defendant's check-in rule runs afoul of 14 C.F.R Part 250 is misguided because, as previously discussed, 14 C.F.R. 250 does not apply in this instance. (*See supra* § I.) To the extent that the practice is somehow deceptive, as Plaintiffs claim, as discussed above, it would be a matter for the DOT to investigate and enjoin pursuant to 49 U.S.C. § 41712. (*See id.*)

Therefore, under the express terms of the contract and the undisputed facts, Defendant did not breach the contract as a matter of law.

### III.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant contends that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is preempted by the Airline Deregulation Act of 1978 and is without merit because it is based upon the same facts as the deficient breach of contract claim. (*See* Def.'s Mem. 6-10.) Plaintiffs dispute that the claim is preempted and assert that the claim has merit because Defendant continuously denied their request for compensation for years after the flight. (*See* Pls.' Mem. 10-11.)

Assuming, *arguendo*, that Plaintiffs' good faith and fair dealing claim is not preempted, it fails on the merits. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F. 2d 1052, 1056 (2d Cir. 1992) (internal quotation marks omitted). However, "New York law. . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F. 3d 73, 81 (2d Cir. 2002). In addition, "[n]o obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship." *Horn v. N.Y.*

9

*Times*, 100 N.Y.2d 85, 92 (2003) (emphasis omitted) (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)); *see also Consol. Edison, Inc. v. Ne. Utils.*, 426 F. 3d 524, 529 (2d Cir. 2005) (Implied contractual obligation "exists to serve the intent of the parties, and does not operate at cross-purposes to that intent.").

Plaintiffs' claim, to the extent it is based on being denied boarding because they were in line but not checked-in one hour before the flight, duplicates their unsuccessful breach of contract claim. It also attempts to impose an obligation that directly contradicts the express terms of the contract of carriage, which requires Plaintiffs to actually check-in one hour before the flight, not just be in line. (*See supra* § II.) For both reasons, Defendant is entitled to summary judgment on the good faith and fair dealing claim.

Plaintiffs' attempt to distinguish their good faith and fair dealing claim from their breach of contract claim on the basis that Defendant has rebuffed Plaintiffs' attempts to collect compensation during the past few years does not save their claim. Defendant's refusal to pay denied boarding compensation was not in bad faith because, as discussed above, Plaintiffs were not entitled to such compensation under applicable law and the contract of carriage. (*See supra* §§ I-II.) Defendant cannot be faulted for refusing to pay money that it did not owe Plaintiffs.

Therefore, Defendant is entitled to summary judgment on the breach of the implied covenant of good faith and fair dealing claim.

**IV.     Collateral Estoppel**

Plaintiffs contend that Defendant is collaterally estopped from defending against Plaintiffs' claims because of a prior consent decree entered into between the DOT and Defendant. (*See* Pls.' Mem. 8-10.) Defendant responds that, even if the consent order could be given preclusive effect, the issues in the consent order were different from the issues in this

action. (*See* Def.'s Reply Mem. of Law in Further Supp. of its Mot. for Summ. J., Dkt. Entry 45, at 3-4.)

Collateral estoppel, or issue preclusion, bars a party from relitigating an issue already decided in a previous proceeding where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was 'actually litigated and actually decided,' (3) there was 'a full and fair opportunity for litigation in the prior proceeding,' and (4) the issues previously litigated were 'necessary to support a valid and final judgment on the merits.'" *Ali v. Mukasey*, 529 F. 3d 478, 489 (2d Cir. 2008) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F. 2d 38, 44 (2d Cir. 1986)).

The consent order between Defendant and the DOT concerns various alleged violations of 14 C.F.R. Part 250. *Delta Air Lines, Inc., Violations of 14 C.F.R. Part 250 and 49 U.S.C. § 41712*, Order 2009-7-7, at 1 (Dep't of Transp., July 9, 2009) (attached as Ex. B to Pls.' 56.1 Stmnt.). Specifically, Defendant allegedly violated the regulation because of its failure: "1) to solicit volunteers before involuntarily denying boarding to passengers on oversold flights, 2) to furnish the required written notice to passengers who were denied boarding involuntarily ('bumped'), and 3) to provide bumped passengers with the appropriate amount and type of denied boarding compensation (DBC) in a timely manner." *Id*. These issues are far removed from Plaintiffs' allegations that it is a violation of 14 C.F.R. Part 250 to be denied boarding for failing to check-in on time. Indeed, they reinforce the court's holding that the regulation applies only to oversold flights, but not this action. Thus, Defendant is not barred by collateral estoppel from defending against Plaintiffs' claims.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted and the complaint is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
September 11, 2012

/s/
DORA L. IRIZARRY
United States District Judge